UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NORA MONACO,                                                                     :

       Plaintiff,                                                              :         Case No.

          --against--                                                     :         **COMPLAINT AND JURY DEMAND**

DXC Technology and Computer Sciences Corporation,   :

       Defendants.                                                           :
------------------------------------------------------------------------X

## NATURE OF THE ACTION

1. Plaintiff Nora Monaco ("Ms. Monaco"), brings this action against Defendant Computer Sciences Corporation ("CSC") and its successor Defendant DXC Technology Services LLC ("DXC") ("Defendants"), for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA").

2. Ms. Monaco's claims arise from the termination of her employment in retaliation for her going on FMLA leave and she brings this action to seek compensatory damages, incidental damages, consequential damages, punitive damages, attorneys' fees and costs, and other appropriate legal and equitable relief pursuant to the FMLA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Ms. Monaco's FMLA claims pursuant to 28 U.S.C. § 1331.

4. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Ms. Monaco worked for CSC from her residence and the unlawful retaliation and employment practices complained of herein occurred while Ms. Monaco worked out of her residence in the Eastern District of New York.

1

## FACTUAL ALLEGATIONS

5. At all relevant times, CSC has been an IT services company doing business in New York.

6. Defendant DXC is an IT services company incorporated in Delaware and doing business in New York.

7. DXC is the successor of CSC.

8. On or about April 4, 2017, DXC was created by the merger of CSC and the Enterprise Services business of Hewlett Packard Enterprise.

9. CSC is also a wholly owned subsidiary/division of DXC.

10. At all relevant times, Defendants had more than 50 employees and are headquartered in Virginia.

11. Ms. Monaco was employed by CSC from April 2000 to January 20, 2017 as a Home-based Professional System Programmer Analyst.

12. As a Home-based Professional System Programmer Analyst, Ms. Monaco worked from her home in New York.

13. Ms. Monaco's supervisor, Joe Zipp ("Mr. Zipp"), worked from his home in New Jersey.

14. Ms. Monaco's mother is seriously ill and has been for several years.

15. Ms. Monaco applied to CSC for, and was granted, FMLA leave to care for her mother for the periods of:  June through September, 2014; June through September, 2015; and June through September, 2016.

16. Several times while Ms. Monaco was on FMLA leave, she was asked by her supervisor Mr. Zipp, to do work and Ms. Monaco agreed to do so because she believed that her

job depended on her agreement to do this work while on FMLA leave.

17. In addition, while Ms. Monaco was on FMLA leave and she was caring for her seriously ill mother, Mr. Zipp texted Ms. Monaco and asked her how was her "vacation" and told Ms. Monaco that he was annoyed that she was on FMLA leave.

18. In 2016, when considering who to lay off, on behalf of CSC, Mr. Zipp asked John Pennisi, the Project Manager for the project Ms. Monaco was working on, "would you rather have Nora Monaco for 9 months a year or David Gonzalez for 12 months a year?"

19. This remark was clearly related to the fact that Ms. Monaco had in the past taken FMLA protected leave and was intending to take FMLA protected leave again to care for her mother during the summer months.

20. Ms. Monaco never received any criticism from CSC about her work or work performance.

21. On her Performance Evaluation for the period of April 1, 2015 to April 1, 2016, Ms. Monaco received a rating of "Exceeds all expectations."

22. Ms. Monaco's employment was terminated by CSC on January 20, 2017 purportedly as part of a reduction in force ("RIF").

23. CSC terminated Ms. Monaco and retained a lower performing, less qualified individual to perform Ms. Monaco's duties--a male employee who had never gone out on FMLA leave while employed by the CSC.

24. Thus, it was clear that Ms. Monaco's FMLA leaves were factors when CSC considered who to layoff as part of each of the RIFs.

25. In the most recent RIF, there is no legitimate reason that Ms. Monaco was terminated rather than the lower performing, less qualified individual.

26. The only explanation for Ms. Monaco's termination was her use of FMLA protected leave in order to care for her family member's serious medical condition.

27. If not for retaliation for her going on FMLA leave, Ms. Monaco's employment would not have been terminated.

**CLAIM FOR RELIEF**
**(Retaliation for the Exercise of FMLA Rights)**
**(Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.)**

28. Ms. Monaco incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

29. The Family and Medical Leave Act ("FMLA") covers employers like Defendants that employ fifty or more employees.

30. DXC is the successor to CSC.

31. At all relevant times, Defendants were Ms. Monaco's "employer" as that word is defined under the FMLA, 29 U.S.C. § 2611(4)(A)(ii).

32. Ms. Monaco was eligible under the FMLA because she worked for CSC for at least a year and at least 1250 hours in the last 12 months.

33. An employee may take job-guaranteed leave under the FMLA in order to care for a family member who has a "serious health condition."

34. Ms. Monaco was entitled to protection under the FMLA.

35. An employer is prohibited from punishing or retaliating against an employee for taking FMLA-qualifying leave.

36. Because the leave that Ms. Monaco took was FMLA-qualifying, the decision to

terminate her in retaliation for taking this leave is in violation of her rights under the FMLA and the FMLA's anti-retaliation provisions.

37. There was no legitimate reason for the termination of Ms. Monaco's employment and she would not have been terminated if not for the retaliation for using the protections in the FMLA law.

38. CSC's conduct caused Ms. Monaco to suffer significant damages.

39. Ms. Monaco has been unsuccessful in procuring comparable employment since her wrongful termination.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: New York, New York
January 18, 2018

**LAW OFFICE OF RONALD B. WEISENBERG**

By: _____/S/_____
Ronald B. Weisenberg, Esq.
167 East 67th Street, 9A
New York, New York 10065
Tel: (212) 233-8510
Fax: (877) 427-1231
Attorney for Plaintiff Nora Monaco