**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – X

Nora Monaco,

      Plaintiff,                         **Case No. 1:18-cv-00372-AMD-RML**

v.                                 **DEFENDANTS' MEMORANDUM**
                                         **OF LAW IN SUPPORT OF**
DXC Technology and Computer       **MOTION FOR SUMMARY**
Sciences Corporation,                **JUDGMENT**

      Defendants.                   **Filed and served on March 22, 2021**

– – – – –––––––––––––––––––––––––––––––––––––––X

NOW COME Defendants, Computer Sciences Corporation ("CSC") and DXC Technology Company ("DXC") (collectively "Defendants"), by and through undersigned counsel, who hereby submit the following Memorandum of Law in Support of Motion for Summary Judgment.

## Introduction

This case arises out of a claim by Plaintiff, Nora Monaco ("Plaintiff" or "Monaco"), that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, by terminating her employment in January 2017 as part of a legitimate workforce reduction. Specifically, Plaintiff claims Defendants unlawfully retaliated against her for taking medical leave pursuant to the FMLA. [ECF 1 at ¶ 2.] Plaintiff's FMLA retaliation claim must be dismissed because no reasonable juror could find in her favor.

Indeed, there is no evidence in the record from which to conclude that Plaintiff was employed by Defendant DXC such that liability could be imputed upon it for any alleged violations of the FMLA. Further, Plaintiff cannot demonstrate that CSC terminated her employment in retaliation for taking FMLA leave. Instead, the undisputed evidence shows that CSC initiated a headcount reduction that resulted in Plaintiff's layoff in January 2017 and made its selection based

upon legitimate business reasons wholly unrelated to Plaintiff's use of FMLA leave from late June to late September in 2014, 2015, and/or 2016. Finally, even if Plaintiff has a cognizable claim under the FMLA, and she does not, she has failed to meet her duty to mitigate her economic damages.

### Summary of the Undisputed Material Facts

Defendants incorporate by reference the facts set forth in their Rule 56.1 Statement of Undisputed Material Facts ("UF") and summarize said facts below.

In April 2000 CSC, an IT services company, entered into an agreement with AT&T to outsource a number of AT&T's directorates, or business verticals, including AT&T's Consumer Billing Systems directorate (hereinafter referred to as the "Account"). (*See* Undisputed Facts ("UF") attached as Exhibit A, Nos. 1, 5.) Pursuant to the outsourcing agreement, CSC has been required to reduce the costs on the Account on an annual basis starting in 2001. (UF Nos. 6, 8.)

Prior to the outsourcing agreement, Joseph Zipp ("Zipp") was a district manager for AT&T within the Consumer Billing Systems directorate. (UF 11.) Effective April 29, 2000, Zipp became an employee of CSC. (*Id.*) Like Zipp, Plaintiff transitioned to CSC from AT&T in 2000 in connection with the outsourcing agreement, and she continued in her role as a computer programmer supporting the Account. (UF 13, 17.) Plaintiff has known Zipp for 30 years and started reporting to him at CSC in 2002 after Zipp assumed the managerial responsibilities over her group. (UF 19.) Plaintiff primarily worked from home during her employment with CSC. (UF 22.)

During her employment, Plaintiff took FMLA leave on four (4) separate occasions: in 2008 following the birth of her children and from late-June through late-September in 2014, 2015 and 2016 to care for her mother at her vacation home in the Catskills. (UF Nos. 34, 38, 46, 50.) CSC approved each of these periods of leave and returned Plaintiff to the same job she held at the

conclusion of each of leave period. (*Id.*; UF Nos. 44, 49, 53.) While she was on leave in the summers of 2014, 2015, and 2016, Zipp assigned Plaintiff's job responsibilities to other employees with similar skill sets or knowledge of her applications and responsibilities. (UF Nos. 43, 48, 52.)

In January 2017, Zipp's manager informed him that the business needed to reduce the headcount of his group by two employees and identified Plaintiff and one other employee to be laid off.[1] (UF 54.) While Zipp considered Plaintiff to be a solid performer, he also considered everyone else in his group to be top performers as they were last few remaining legacy AT&T employees. (UF 57.) Nevertheless, Zipp was required to select two people for release. Zipp believed that Plaintiff's release would have the least impact to the account because her responsibilities could be divided among the remaining team members. (*Id.*) Zipp did not consider Plaintiff's use of FMLA in confirming her selection for layoff. (UF 60.) In addition, Zipp retained an employee who had taken FMLA leave approximately one year before the January 2017 workforce reduction. (UF 68.)

Immediately prior to her layoff, Plaintiff applied for two other positions within CSC with Zipp's assistance. (UF 69.) Following her layoff, Plaintiff applied for only six (6) positions thereafter (all in 2017); however, she rejected the sole job offered to her and has not worked for any other employer since her layoff in January 2017. (UF 70-72.)

Prior to April 1, 2017, CSC was an independent, publicly traded company. On April 1, 2017, CSC merged with and into a wholly owned subsidiary of DXC Technology Company, a new independent, publicly traded company. As a result of the merger, CSC is now a direct wholly

---

[1]    When the need to reduce costs required CSC to release employees under Zipp, his manager would request that he rank his direct reports. The criteria Zipp used to rank his reports included performance, criticality to the business, and job skills. Zipp's management team would then decide how many individuals from his group were going to be released and inform him of the individuals selected. [Add cite]

owned subsidiary of DXC Technology Company. (*See* Declaration of Ira Katz ("Katz Decl.") at ¶ 3; *see also* Corporate Disclosure Statement, ECF 10.)

**Legal Argument**

Plaintiff brought this litigation against CSC and CSC's parent company, DXC Technology Company, alleging that her separation from CSC in January 2017 was in retaliation for exercising her rights under the FMLA. Based on the above undisputed facts, however, Defendants assert that Plaintiff cannot establish her claim of FMLA retaliation. As a preliminary matter, Plaintiff cannot establish that DXC is liable for any of the conduct alleged in her Complaint as DXC was never her employer. Additionally, Plaintiff cannot demonstrate a *prima facie* case of FMLA retaliation against CSC as she cannot demonstrate that her separation occurred under circumstances giving rise to an inference of retaliatory intent. Further, even if Plaintiff could establish a *prima facie* case (which she cannot), CSC has established a non-retaliatory reason for its actions as Plaintiff was selected for layoff in a legitimate cost reduction exercise, and Plaintiff cannot show that CSC's proffered explanation is pretextual. Finally, Defendants assert that Plaintiff failed to mitigate her alleged damages following her separation from CSC as she undertook no reasonable efforts to find comparable employment.

### A. Summary Judgment Standard

Summary judgment may be granted when the parties' sworn submissions show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett* 477 U.S. 317, 322-23 (1986); *Viola v. Phillips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). In opposing a summary judgment motion, the non-moving party cannot rely on allegations or denials in her own pleading, but rather must produce materials that set forth a genuinely disputed issue of material fact. *Gottlieb v. County*

4

*of Orange, N.Y.*, 84 F.3d 511, 518 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In considering a summary judgment motion, the Court should consider the burden of proof necessary to support liability, as well as the underlying standards. *Id*. at 254-55. "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988).

Here, Plaintiff cannot sustain an FMLA retaliation claim because the uncontroverted evidence reveals that Plaintiff's layoff was caused not by her medical leave, but was instead the result of a necessary cost reduction measure that reduced the headcount of Zipp's group by two individuals, and Plaintiff's work was more easily distributed among remaining employees than others. Finally, even if Plaintiff has a cognizable claim under the FMLA, she cannot direct the Court to any evidence that she met her duty to mitigate her economic damages. Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's Complaint in its entirety.

## B. Plaintiff Cannot Assert a Viable FMLA Claim against DXC because DXC Was Not Her Employer.

The FMLA grants to eligible *employees* the right to "a total of 12 workweeks of leave during any 12–month period" due to a serious health condition of a family member that prevents the employee from performing her work functions. *See* 29 U.S.C. § 2612(a)(1); *McGuiness v. E. W. Indus.*, 857 F. Supp. 2d 259, 264 (E.D.N.Y. 2012) (Wexler, J.). The FMLA also prohibits retaliation against *employees* who exercise their rights under the FMLA. *Id.* "'It is a general

principal [sic] of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.'"[2] *Pacho v. Enter. Rent–A–Car Co.,* 572 F.Supp.2d 341, 351 (S.D.N.Y.2008) (quoting *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)); *Analect LLC v. Fifth Third Bancorp*, 636 F. Supp. 2d 181, 192 (E.D.N.Y. 2008) (Bianco, J.), *aff'd,* 380 F. App'x 54 (2d Cir. 2010).

While liability may attach to a parent company in certain circumstances, the burden is high on the plaintiff to pierce the corporate veil. In the employment context, the plaintiff must demonstrate that there are "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Herman v. Blockbuster Entertainment Group,* 18 F.Supp.2d 304, 308 (S.D.N.Y.1998) (Lowe, J.) (quoting *Armbruster v. Quinn,* 711 F.2d 1332, 1337 (6th Cir.1983)), *aff'd* 182 F.3d 899 (2d Cir.1999), *cert. denied,* 528 U.S. 1020, 120 S.Ct. 529, 145 L.Ed.2d 409 (1999). The Second Circuit has identified the following factors that courts should use in evaluating whether a parent corporation is sufficiently related to the subsidiary employer such that liability would flow to the partent are related in such a manner are "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 378 (S.D.N.Y. 2001) quoting *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995)).

---

[2]       In fact, under New York law, and as the Second Circuit has recognized, a plaintiff must demonstrate one of the following two exceptional circumstances in order to pierce the corporate veil and permit liability of the parents on behalf of its subsidiary: " '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.' " *Parnell v. Tremont Capital Mgmt., Corp.,* 280 Fed.Appx. 76, 77–78 (2d Cir.2008) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997)).

Here, Plaintiff cannot establish that she was employed by DXC, and even admits that fact is undisputed. (UF 15.) Moreover, there is no record evidence that CSC and DXC maintain interrelated operations, central control of labor relations, common management, and/or common ownership or financial control. Indeed, prior to April 1, 2017, CSC was an independent, publicly traded company. (UF 2.) On April 1, 2017, CSC merged with and into a wholly owned subsidiary of DXC Technology, a new independent, publicly traded company. (*Id.*) As a result of the merger, CSC is now a direct, wholly owned subsidiary of DXC Technology Company. (*Id.*) As Plaintiff was separated before DXC's was even in existence, her claims against DXC should be dismissed on this basis as a matter of law. *See Guzman v. News Corp.,* 2013 WL 5807058 at *8 (S.D.N.Y. Oct. 28, 2013) (finding that a parent company is not ordinarily liable for the employment discrimination of its subsidiary).

## C. Plaintiff Cannot Meet Her Burden of Proof on Her FMLA Retaliation Claim as to CSC.

The Second Circuit has recognized two distinct FMLA causes of action – interference claims based upon § 2615(a)(1), and retaliation claims based upon § 2615(a)(2) and § 2615(b). *Potenza v. City of New York,* 365 F.3d 165, 167–68 (2d Cir. 2004); *Wanamaker,* 899 F.Supp.2d at 204. Unlike interference claims, retaliation claims require a determination as to whether the employer had a retaliatory or discriminatory intent. *Reid–Falcone v. Luzerne Cnty. Cmty. Coll.,* No. 3:CV–02–1818, 2005 WL 1527792, at *4, 9 (M.D.Pa. June 28, 2005). Thus, to establish a retaliation claim under the FMLA, a plaintiff must show that she was punished for exercising her rights under the FMLA. *Hill v. New York City Hous. Auth.*, 220 F. Supp. 3d 499, 507-08 (S.D.N.Y. 2016).

At the summary judgment stage, FMLA retaliation claims are analyzed under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),

burden-shifting framework. *Potenza,* 365 F.3d at 168; *Weichman v. Chubb & Son,* 552 F.Supp.2d 271, 289 (D.Conn.2008). Plaintiff must first make out a *prima facie* case of retaliation by showing (1) that she exercised rights protected under the FMLA; (2) that she was qualified for the position: (3) that she suffered a material adverse employment action by her employer; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,* 691 F.3d 134, 147 (2d Cir. 2012) (internal quotation marks omitted); *Potenza,* 365 F.3d at 168.

If Plaintiff puts forth sufficient evidence to establish a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Defendants' burden is one of production, not persuasion, and it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. at 142, 120 S.Ct. 2097 (internal citations and quotation marks omitted). Defendants must merely set forth, through admissible evidence, "reasons for [their] actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original). If Defendants meet that burden of production, Plaintiff must establish by a preponderance of the evidence that Defendants' stated reason was pretextual. *Serby v. New York City Dept. of Educ.,* 526 Fed.Appx. 132, 134 (2d Cir. 2013); *Wanamaker,* 899 F.Supp.2d at 207.

Here, Plaintiff's only claim in this case is that she believes her termination was unfair. (Pl. Dep. at 155-56.) However, Plaintiff cannot establish a *prima facie* case that her termination was **retaliatory** because the record is devoid of any evidence that would suggest – much less establish – that her release in a workforce reduction was driven by retaliatory intent. Further, even if Plaintiff could establish a *prima facie* case (which she cannot), CSC has established a non-retaliatory reason

for its action: Plaintiff was selected for layoff in a legitimate cost reduction exercise because she was one of the lowest rated employees under Zipp and her work was more easily distributed to others employees. Finally, Plaintiff cannot show that CSC's proffered explanation is pretextual.

### 1. Plaintiff Cannot Establish that Her Separation Occurred under Circumstances Giving Rise to an Inference of Retaliatory Intent.

To establish that the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent, Plaintiff must provide a basis for a jury to conclude that "'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.'" *Donnelly*, 691 F.3d at 152 (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)). As this Court has recognized, an inference of retaliation can be established: "(1) directly through evidence of retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly either by (a) showing that the protected activity was followed closely by discriminatory treatment, or (b) through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Williams v. Cty. of Nassau*, No. 15-CV-7098, 2019 WL 2270518, at *11 (E.D.N.Y. May 28, 2019) (Hurley, J.) (internal citations omitted).

Because Plaintiff has no direct evidence of retaliatory animus, she must establish a causal nexus through either temporal proximity or disparate treatment. Plaintiff can establish neither, and for that reason alone, her FMLA retaliation claim must be dismissed.

### a. There Is No Evidence of a Retaliatory Animus Directed Against Plaintiff.

As an initial matter, the evidence presented by Plaintiff in support of her claim that CSC retaliated against her for exercising her rights under the FMLA is "simply incompatible with an inference of retaliatory intent." *Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015), *aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York*, 648 F. App'x 118 (2d Cir. 2016) (quoting *Washington v. Acorda Therapeutics, Inc.*, No.

11 CV 5085 VB, 2014 WL 4467820, at *13 (S.D.N.Y. Aug. 28, 2014)). In her deposition, Plaintiff claimed Zipp's retaliatory intent is evidenced by a series of messages from him while she was out on leave in 2015 and 2016. However, Plaintiff was unable to identify any statements or other evidence which directly linked her FMLA leave with her termination. Rather, Plaintiff testified that she informed Zipp that he could contact her while she was out on leave if necessary, and over the course of her three periods of leave in 2014, 2015 and 2016, Zipp reached out to her approximately ten (10) times.[3] At no point was Plaintiff required to perform any substantive work while on leave, and she was always returned to the same position at the expiration of her periods of leave. (UF 34, 38, 44, 46, 49, 50, 53.)

Additionally, there is no admissible record evidence that Zipp, or anyone else from CSC, ever mentioned Plaintiff's use of FMLA in connection with the decision to separate her employment. *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination"). On the contrary, the record evidence actually reveals the ***absence*** of a retaliatory intent considering that Plaintiff took a total of four (4) periods of FMLA leave (2008, 2014, 2015, and 2016) while under Zipp's supervision, and CSC approved each of these periods of leave and returned Plaintiff to the same job she held at the conclusion of each leave period. (UF Nos. 34, 38, 44, 46, 49-50, 53.) *See Kim v. Goldberg, Weprin, Finkel*

---

[3]     *See, e.g.,* Pl. Dep. at 142 (noting that Exhibits 26-31 to Pl. Dep. represent all of the text messages and emails that Plaintiff contends are evidence of Zipp's retaliatory intent); *Id.* at 143, 146 (nothing that Plaintiff told Zipp it was okay to check in with her about work issues if someone needed assistance); *Id.* at 146-47 (noting that in Ex. 29 Zipp was asking if Plaintiff could support a software release in September); *Id.* at 148-49 (noting that Zipp's questions in Ex. 30 were fair questions); *Id.* at 149-50 (noting that Plaintiff had no evidence that Zipp spoke to one of Plaintiff's coworkers about emailing her). This evidence is at most stray remarks unrelated to the challenged employment decision, and it falls well short of raising an inference of retaliation. *See Alexander*, 107 F. Supp. 3d at 330 ("[I]solated and stray remarks, without more, are insufficient to raise an inference of retaliation."); *Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 388 (S.D.N.Y. 2009) ("little more than "stray remarks" that are insufficient to sustain a reasonable inference that defendant was motivated by [retaliation]").

*Goldstein, LLP*, 862 F. Supp. 2d 311, 321 (S.D.N.Y. 2012) ("Upon review of the record as a whole, the Court is persuaded that Kim has not raised a genuine issue of material fact regarding GWFG's motives for dismissing her [because] [s]he returned from her 2009 Leave and was reinstated in the same position with the same title, responsibilities and pay."). Moreover, Plaintiff admits that throughout that same time frame, Zipp provided her favorable performance reviews that Plaintiff believed to be fair. (UF 63; Pl. Dep. at 65-69.) In addition, after the decision had been made to layoff Plaintiff, Zipp attempted to find her another position in the company. (UF 69.)

In sum, there is a complete lack of record evidence demonstrating a retaliatory animus directed against Plaintiff.

### b. The Temporal Proximity between Plaintiff's Return from Leave and Her Separation Is Too Remote to Establish an Inference of Retaliatory Intent.

Because there is no direct evidence of a retaliatory animus against Plaintiff, she must direct the Court to circumstantial evidence to support the fourth *prima facie* element of an inference of retaliatory intent. The Second Circuit has held that a plaintiff can establish an indirect "causal inference" by way of "'very close' temporal proximity" between the taking of FMLA leave and an adverse employment action. *Donnelly*, 691 F.3d at 152. Courts "frequently find a period of a few weeks sufficient to allow a jury to infer a causal connection between the protected act and the adverse employment action." *Fernandez v. Woodhull Med. and Mental Health Ctr.*, No. 14-CV-4191, 2017 WL 3432037, at *8 (E.D.N.Y. Aug. 8, 2017) (Brodie, J.). *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 835 (2d Cir. 2013) ("The three-week period from [the plaintiff's] complaint to her termination is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity."); *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (ruling that an issue of fact existed as to retaliation causation where supervisors recommended terminating the plaintiff two weeks after his complaint); *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d

Cir. 2002) ("The temporal proximity between [plaintiff's] protected activity in February 1998 and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link.").

Conversely, courts have "consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007). *See also Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 321 (S.D.N.Y. 2012) ("Kim's termination occurred too long after her return from the 2009 Leave—four months— to suggest that her termination was the result of that leave and she pleads no other facts that could lead to the conclusion that it is more likely than not that GWFG's decision to terminate her was pretext for discrimination."); *Ruhling v. Tribune Co.*, No. 04-Civ-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (Lindsay, J.). Courts generally do not extend a causal relationship to these longer timespans because they are "simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive." *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (time lapses of "two months to several years"); *Choi v. Ferrellgas, Inc.*, No. 217CV3518ADSSIL, 2020 WL 122976, at *8 (E.D.N.Y. Jan. 10, 2020) (Spatt, J.).

Here, Plaintiff returned from her last period of FMLA leave on September 21, 2016 and was laid off on January 20, 2017. As a result, Plaintiff's layoff nearly four (4) months after her leave return date is too remote to establish causation based on temporal proximity alone. *See Barletta v. Life Quality Motor Sales, Inc.*, No. 13-CV-2480, 2016 WL 4742276, at *5 (E.D.N.Y. Sept. 12, 2016) (Irizarry, J.) (determining that a four month gap between FMLA leave and termination was insufficient to give rise to inference of retaliation).

**c. There Is No Other Circumstantial Evidence of Disparate Treatment.**

Given that temporal proximity will not save Plaintiff's claim from summary dismissal, Plaintiff may also attempt to point to purported evidence of disparate treatment. However, there is no record evidence that tends to support this conclusion. On the contrary, the record establishes that on January 12, 2017, Zipp's manager informed him that the business needed to reduce the headcount of his group by two employees and identified Plaintiff and PERN 545240 as the individuals to be laid off. (UF 54.) Upon his manager's request for his input into the selections, Zipp responded that he wanted to remove both individuals from consideration as Plaintiff was involved in a project with nine months of anticipated work, and PERN 545240 was one of two individuals responsible for ITMS tables management that covered hundreds of different tables. (UF 55.) While Zipp considered Plaintiff to be a solid performer, he also considered everyone else in his group to be top performers given that they were last few remaining legacy AT&T employees. (UF 57.) This fact is evidenced by the following performance reviews:[4]

|  | Monaco | PERN 545455 | PERN 544973 | PERN 545240 |
|---|---|---|---|---|
| **2015 Performance Appraisal** | Meets all and exceeds some expectations | Exceeds all expectations | Exceeds all expectations | Meets All and Exceeds Some expectations |
| **2016 Performance Appraisal** | Exceeds all expectations | Exceeds all expectations | Exceeds all expectations | Exceeds all expectations |

However, because Plaintiff's work could be divided among remaining employees, she was selected to be released in connection with the January 2017 reduction-in-force.[5] (*Id.*) It is disputed

---

[4]    PERN 545455 is one of Monaco's former peers, but he did not report to Zipp and thus was not provided with a performance evaluation by Zipp and not in the same pool of candidates as Plaintiff for Zipp's consideration for the January 2017 reductions. (UF 63.) However, Plaintiff identified him in her Complaint as "a lower performing, less qualified individual," an allegation that is clearly unsupported by the evidence.

[5]    Zipp explained that he decided to remove PERN 545240 from the reduction list and replace her with PERN 545043. Zipp identified PERN 545043 for selection because Zipp was familiar with his duties and responsibilities as Zipp personally trained PERN 545043 to perform his role and, moving forward, Zipp would be able to take over those responsibilities himself. (UF 56). PERN 545043 has not taken FMLA leave while employed by CSC. (UF 68.)

that Plaintiff's layoff was a direct result of the need to reduce costs on the Account and that her duties were thereafter assigned to other employees who reported to Zipp. (UF 60-61.)

With regard to the other individual identified by Zipp's manager for release, Zipp explained that he decided to remove PERN 545240 from the reduction list and replace her with PERN 545043 because no one else possessed the knowledge that PERN 545240 had with ITMS tables and the ITMS tables management group required a minimum of two employees. (UF 55, 56.) Zipp identified PERN 545043 for selection because Zipp was familiar with his duties and responsibilities as Zipp personally trained PERN 545043 to perform his role and, moving forward, Zipp would be able to take over those responsibilities himself. (UF 56.) PERN 545043 has not taken FMLA leave while employed by CSC. (UF 68.) Further, Plaintiff admits that her peers, whom she claims should have been laid off instead of her, did not perform the same role that she performed. (UF 64.) In addition, Zipp retained another employee who, like Plaintiff, exercised his right to FMLA leave approximately one year before the January 2017 workforce reduction. (UF 68.)

Given that Plaintiff was selected for layoff along with one of her peers who had never exercised his rights under the FMLA and the fact that Zipp retained an employee who had exercised his FMLA rights in the preceding year, Plaintiff cannot establish disparate treatment based on her use of FMLA leave. In the face of this evidentiary void, Plaintiff's only "proof" of retaliation is her speculative belief that Zipp selected her for layoff due to her taking FMLA leave. Indeed, Plaintiff admitted as much in her deposition:

> Q. Your conclusion that you were terminated in '17 because of taking FMLA leave is
> based solely on your opinion, correct?
> A. Yes.

(Pl. Dep. at 122.) In any event, Plaintiff's subjective opinion is no substitute for competent, admissible evidence when evaluating whether she has established a *prima face* case of retaliation. *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371-72 (S.D.N.Y. 2005) ("[A] Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.") (citation omitted).

Even if Plaintiff had offered some evidence to support an inference of retaliation, as the Southern District of New York held in *Alexander v. BOE*, the fact that she "return[ed] to work after her leave counters any inference of discrimination Plaintiff seeks to establish." 107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015), *aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York*, 648 F. App'x 118 (2d Cir. 2016). In *Alexander*, a school nurse applied for and received intermittent FMLA leave for the purpose of escorting her daughter to physical therapy sessions. *Id.* at 326. But, when her daughter refused to attend those sessions, the plaintiff did not advise her employer that "the purpose for which the leave had been approved no longer existed" and instead took classes at a local college while on leave. *Id.* After the plaintiff returned to work and applied for tuition reimbursement, her manager initiated an investigation into the circumstances surrounding her leave. *Id.* at 326-27. The employer's investigation confirmed that the plaintiff had used her FMLA leave time for an improper purpose, and her employment was subsequently terminated on that basis. *Id.* at 327. Plaintiff filed a lawsuit alleging that her discharge was in retaliation for taking FMLA leave. *Id.* at 329.

The court granted the employer's motion for summary judgment (and the Second Circuit affirmed), finding that the plaintiff failed to raise an inference of retaliation. *Id.* at 332. First, the Court rejected the plaintiff's attempt to establish a causal nexus through the temporal proximity

between her return from FMLA leave and the termination of her employment, recognizing that "the passage of more than two months has been viewed as beyond the 'any retaliatory nexus.'" *Id.* The court next found that stray remarks of the plaintiff's manager concerning her leave and "physical display of displeasure . . . when Plaintiff requested the leave" were insufficient to establish an inference of retaliation. *Id.* at 330. The Court further noted that while the plaintiff may have deemed such conduct as evincing discriminatory animus, the employer's comments "that [p]laintiff needed to return quickly from maternity leave could also be construed as affirming her importance to [her employer]." *Id.* Finally, the Court concluded that any evidence the plaintiff might have offered to establish retaliatory intent would have been discounted because "[r]einstating Plaintiff to her nursing post upon her return gives rise to an inference that Plaintiff's superior's alleged displeasure was not the catalyst for [her] termination." *Id.*

The same is true here. The undisputed record evidence clearly demonstrates that Plaintiff successfully applied for and received FMLA leave on four separate occasions while under Zipp. Upon her return from each period of leave, Plaintiff was fully reinstated to her position and continued to work under Zipp until CSC made the legitimate business decision to initiate a headcount reduction that affected Zipp's group. Zipp explained that he would have rather kept Plaintiff on the Account than separate her employment but that she was ultimately selected as she was one of the lowest ranked employee in his group and her work was more easily divided among the remaining employees. Because the record is devoid of any evidence even remotely suggesting that Plaintiff was treated differently than anyone else who did not exercise their rights under the FMLA, Plaintiff cannot establish an inference of retaliation and her claim must be dismissed.

### 2. CSC Had a Legitimate, Non-retaliatory Reason for Terminating Plaintiff's Employment.

An employer's evidence demonstrating that an employee was terminated through a "business-justified, company-wide reduction in its work force," in response to changing business conditions and with reliance on "non-discriminatory guidelines in selecting the employees to be fired," effectively rebuts a *prima facie* case of employment discrimination. *Gaydos v. Sikorsky Aircraft, Inc.*, No. 14-CV-636 (VAB), 2016 WL 4545520, at *13 (D. Conn. Aug. 31, 2016) (quoting *Viola v. Philips Medical Systems of North Am.*, 42 F.3d 712, 717 (2d Cir. 1994) (finding defendant's evidence of company-wide reduction in force sufficient to rebut plaintiff's *prima facie* case in age discrimination case)). *See also Thomsen v. Stantec, Inc.,* 483 F. App'x 620, 623–24 (2d Cir. May 23, 2012) (recognizing a company's downsizing of staff "due to the 2008 economic downturn" as one of the legitimate and non-discriminatory explanations for an employee's termination); *Museau v. Heart Share Human Servs. of New York*, No. 12-CV-1851 DLI MDG, 2014 WL 1277006, at *8 (E.D.N.Y. Mar. 27, 2014) (Irizarry, J.).

Here, Plaintiff does not dispute that CSC initiated regular reductions in force in an effort to meet cost-cutting obligations on the Account. (Pl. Dep. 70-71, 110-12.) These cost-cutting workforce reductions have been an ongoing measure for CSC since it took over the Account in 2000. (UF 5-6, 8-9, 21, 24-32, 54, 65-67.) Thus, CSC has met its burden to produce a legitimate, non-retaliatory reason for Plaintiff's separation.

### 3. Plaintiff Cannot Show that CSC's Proffered Explanation Is Pretextual.

Even if Plaintiff could establish a *prima facie* case of FMLA retaliation, which she cannot, her claim must still be dismissed because she cannot offer any evidence to rebut the legitimate, non-retaliatory reason for the termination of her employment. To rebut the legitimate reasons for her discharge, Plaintiff must either (1) adduce "evidence to a show that the proffered explanation

17

was pretextual," or (2) "identify inconsistencies or implausibilities in that proffered reason." *Alexander*, 648 F. App'x at 122 (citation omitted); *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006)). Plaintiff cannot meet either requirement.

As discussed *supra*, the evidence demonstrates that Plaintiff's requests for FMLA leave in 2014, 2015, and 2016 were granted without incident, and Plaintiff was restored to her position following those periods of leave. (UF Nos. 34, 38, 44, 46, 49-50, 53.) These facts alone support that CSC's reason for selecting Plaintiff was based on legitimate business reasons. *See, e.g., McGuiness v. E. W. Indus.*, 857 F. Supp. 2d 259, 265 (E.D.N.Y. 2012) (Wexler, J.) ("[T]he evidence shows that Plaintiff's requests for FMLA leave ... were granted without incident [and] Plaintiff was restored to his position following those periods of leave ... When considering this evidence, along with Plaintiff's employment record and the downturn in business attested to by Defendant, the court holds that Plaintiff cannot show pretext"). Moreover, the record is bereft of any evidence that CSC selected Plaintiff for layoff *because* she took FMLA leave.

On the contrary, Zipp's manager initially identified Plaintiff for layoff. Critically, after unsuccessfully petitioning to keep Plaintiff's role intact, Zipp determined that Plaintiff's release would have the least impact on the Account because her work was capable of being divided among remaining members of his group. (UF 55-57.) In addition, Plaintiff was not replaced by a lower performer as the individuals who assumed the bulk of Monaco's former duties had higher performance reviews than she did. (UF 63.) Zipp then personally attempted to find an alternate position for Plaintiff within the company. (UF 69.) As such, there are simply no facts which establish, by preponderance of the evidence, that CSC's reason for her release is false. As a result, Plaintiff cannot meet her evidentiary burden to establish pretext, and her claim must be summarily dismissed with prejudice.

**D. Plaintiff Failed to Mitigate Her Alleged Damages.**

Finally, Defendants assert that Plaintiff failed to mitigate her alleged damages following her separation from CSC as she undertook no reasonable efforts to find comparable employment. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998). Although "[t]ypically, the employer has the burden to demonstrate [(1)] that suitable work existed in the marketplace and [(2)] that its former employee made no reasonable effort to find it[,]" "[a]n employer ... is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment." *Id.* at 54. *See also Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005) (accord); *Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1258 (2d Cir.1987) ("Had [the defendant] proved that [the plaintiff] failed to mitigate damages ... [the plaintiff's] back-pay award would have been cut off or reduced at the time of his failure to mitigate ...").

Here, it is clear from Plaintiff's deposition testimony that she undertook no reasonable efforts to find comparable employment. In fact, Plaintiff applied for only six (6) positions in the three-year period following her layoff from CSC: two positions at AT&T, one position with Major League Baseball, two data tech jobs, and a treasury role with a park in the Catskills. (UF 70.) Further, although Plaintiff was offered a job at the park in the Catskills, she rejected the offer and has not worked for any other employer since her layoff in 2017. (UF 71.) Indeed, all of Plaintiff's efforts to find employment arose in 2017; she did not apply for a single position in 2018 or 2019. (UF 72.) In sum, Plaintiff has failed to make any substantive effort to mitigate her alleged damages.

Accordingly, while Defendants deny any liability for Plaintiff's claims, in the event liability is established against Defendants, Plaintiff's back-pay award should be cut off or reduced dating back to the time of her failure to mitigate.

**Conclusion**

In conclusion, Plaintiff cannot proceed on a claim of FMLA retaliation against DXC as she was admittedly never employed by that entity. As to CSC, Plaintiff lacks sufficient evidence to show that the circumstances surrounding her separation from CSC give rise to an inference of retaliation for taking FMLA leave because she lacks a direct showing of retaliatory animus; she cannot show a temporal proximity between a protected activity and an adverse employment action; she does not show sufficient evidence of disparate treatment; and she lacks sufficient evidence of any other circumstance that could give rise to an inference of retaliatory intent. On the contrary, Plaintiff can only direct the Court to her own *sheer speculation* in support of her claim that her layoff had any connection to her FMLA leave. Thus, Plaintiff cannot establish a *prima facie* case of FMLA retaliation. Further, Plaintiff cannot establish that CSC's legitimate, non-retaliatory reason for her separation was pretext for retaliation. Last, Defendants have established that Plaintiff failed to mitigate her alleged damages. Accordingly, her claims against Defendants must be dismissed.

**WHEREFORE,** Defendants respectfully request that the Court dismiss Plaintiff's claim with prejudice.

Respectfully submitted,

*/s/ Joseph R. Ward III*
JOSEPH R. WARD III
THE KULLMAN FIRM
9800 Mount Pyramid Court, Suite 400
Englewood, Colorado 80112
Phone: 720-447-6682
Fax: 504-596-4114
E-mail: jrw@kullmanlaw.com

SAMUEL ZURIK III
JESSICA MARRERO

20

The Kullman Firm
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Phone: (504) 524-4162
Fax: (504) 596-4114
E-mail: sz@kullmanlaw.com
E-mail: jlm@kullmanlaw.com

**Counsel for Defendants**


# CERTIFICATE OF SERVICE

I certify that on March 22, 2021, I filed a copy of the foregoing using the Court's CM/ECF

system which will automatically serve a copy on Plaintiff's counsel of record.


_/s/ Joseph R. Ward III_
_Counsel for Defendants_